[Cite as *State v. Banks*, 2013-Ohio-3865.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-110** |
| RAYMONE D. BANKS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 12 CR 000307.

Judgment: Affirmed as modified and affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Karen A. Sheppert*, Assistant Prosecutor, and *Jenny B. Azouri,* Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew C. Bangerter*, 1360 West 9th Street, Suite 200, Cleveland, OH 44113 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Raymone D. Banks, appeals his convictions, following a jury trial in the Lake County Court of Common Pleas, for Aggravated Robbery, Felonious Assault, two counts of Having Weapons While Under Disability, and Discharge of a Firearm on or near a Prohibited Premises, as well as his sentence of 27 years in prison. The issues to be determined by this court are whether convictions for the foregoing charges are supported by the weight and sufficiency of the evidence when

there is testimony that the defendant pointed a gun at the victim, asked for his money, and the defendant ultimately shot the victim; whether Felonious Assault and Aggravated Robbery are allied offenses when the robbery occurred prior to the shooting; whether Felonious Assault and Discharge of a Firearm on or near a Prohibited Premises are allied offenses when a gun is fired at the victim and the bullet travels into the roadway; and whether a sentence was proper when the judge considered the seriousness and recidivism factors. For the following reasons, we affirm the trial court's judgment, as modified herein.

{¶2} On July 5, 2012, the Lake County Grand Jury issued an Indictment, charging Banks with the following: one count of Aggravated Robbery (Count One), a felony of the first degree, in violation of R.C. 2911.01(A)(1); one count of Felonious Assault (Count Two), a felony of the second degree, in violation of R.C. 2903.11(A)(2); two counts of Having Weapons While Under Disability (Counts Three and Four), felonies of the third degree, in violation of R.C. 2923.13(A)(2) and (A)(3); and one count of Discharge of a Firearm on or near a Prohibited Premises (Count Five), a felony of the third degree, in violation of R.C. 2923.162(A)(3). Each count had a firearm specification, pursuant to R.C. 2941.145. Counts One and Two also had repeat violent offender specifications, pursuant to R.C. 2941.149.

{¶3} A jury trial was held in this matter on July 17-18, 2012. The following pertinent testimony and evidence were presented.

{¶4} Reginald Hall described the April 27, 2012 incident giving rise to the charges against Banks, in which Hall was shot and robbed by Banks. Hall explained that he had known Banks since around 2006 and that they had been friends who had

2

also spent time together while in prison. The day before the shooting, he saw Banks' friend, who stated that Banks was looking for him. On April 27, Banks called Hall several times. Hall explained that the two planned on meeting to "chill out" and smoke marijuana.

{¶5} According to Hall, he drove up to South Saint Clair Street, in Painesville, Ohio, near some apartment buildings, where Banks entered his car. As soon as Banks got in the car, he turned around and pulled out a gun, which Hall described as a black Glock. Banks told Hall to give him his money and started going through the car's glove compartment and center console. Hall testified that Banks stated, "give me everything, I'm gonna shoot you." Hall gave him everything he had, including $500, but Banks still stated, "I'm going to shoot you." Hall grabbed the gun, tried to move it away, and was shot in the leg. Hall explained that after the first shot, Banks pulled the gun back up, Hall grabbed it again, and Banks shot again, missing him and hitting the driver's side window. Banks shot at him a third time and hit him in the forearm. Hall stated that the last shot went off while he was still reaching for the gun.

{¶6} Hall described some of the money later recovered from Banks as his, and stated that he recognized it because he had a "colorful $50," as well as an "old" $10, which he kept because it brought him luck.

{¶7} Hall admitted during cross-examination that he had sold drugs in the past, but he was not doing so on the date of the shooting. He denied meeting Banks for the purpose of selling him marijuana on that date.

3

{¶8} Annie Lerman, a dispatcher at the Lake County Sheriff's Office, testified regarding a 911 call she received from Hall on April 27. A tape of that call was played for the jury, in which Hall stated that he had just been shot "by a dude named Ray."

{¶9} Sergeant Toby Burgett testified that on the date of the shooting, he responded to a call at an Arby's parking lot, where Hall had parked his car after being shot. Burgett saw Hall was inside of his vehicle, "screaming in pain."

{¶10} Sergeant Burgett then went to the scene of the shooting, located around 224 South Saint Clair Street, and saw broken glass on the roadway. After being provided information from witnesses, he and other officers discovered the location of Banks, in an apartment located near the shooting. Banks had removed his clothing and was sleeping. After being asked to dress, he put on a dark pair of jeans and a black hoodie. $600 was found in his jeans pocket. A subsequent search of the apartment revealed a Glock firearm, located in a laundry basket.

{¶11} Burgett said Hall described the denominations of money that were taken from him by Banks and that they were similar to the denominations found in Banks' jeans. Hall was able to identify Banks in a lineup as well.

{¶12} Upon searching Hall's car, a phone was discovered, which matched the number that Hall said Banks had used to call him. A small bag of marijuana was also found inside of the car. A spent bullet was located on the floor of the driver's side, as well as a shell casing on the driver's seat. The driver's side window was shattered, there was a hole in the driver's side door, a hole in the driver's seat, and a mark on the driver's side door jam, which appeared to be a bullet deflection. Sergeant Burgett

4

explained that no gunshot residue exam was performed on Hall or on his clothing, which had been returned to his family at the hospital.

{¶13} Detective Michael Bailey stated that upon responding to the 911 call, Hall stated that "Ray" had robbed and shot him. Upon arrest, Banks identified the black clothing, which was ultimately tested for gunshot residue, and where the money was located, as belonging to him. The phone used by Banks to call Hall was located inside of Hall's car, under the passenger seat. That phone showed a series of calls to Hall's phone.

{¶14} Martin Lewis, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, testified regarding the gunshot residue test he performed in this matter. He explained that gunshot residue was found on Banks' clothing, including near the cuffs of his sweatshirt, but not on the samples taken from his hands.

{¶15} Raymond Jorz, a fingerprint and firearms examiner for the Lake County Crime Laboratory, testified that no fingerprints were found on the Glock firearm submitted for testing. Jorz explained that there were two safeties on the Glock pistol and that it is "not very difficult" to depress the trigger, although it was not a "hair trigger," and a shooter would have to pull the trigger to fire the gun with three and a quarter pounds of pressure.

{¶16} Banks testified on his own behalf. He stated that he knew Hall from purchasing marijuana from him on approximately thirty occasions in the past. On the day prior to the incident, he purchased marijuana from Hall at a gas station. On April 27, he called Hall using a borrowed cell phone to buy more marijuana.

5

{¶17} On April 27, the two men met. According to Banks, when he got inside of Hall's car, Hall brought up a female that they had been talking about the previous day. Banks stated that Hall "was try[ing] to get aggressive" and he believed Hall was trying to fight. Banks then saw Hall grab a gun and point it at his face. Banks grabbed the gun and the two men began "tussling for the gun," with Banks trying to gain control so that he would not be shot. In the struggle, he pointed the gun down, toward Hall, and Hall was shot. Banks explained that the second shot, which broke the driver's side window, and the third shot, which hit Hall's arm, also occurred during the struggle for the gun. According to Banks, after the third shot, he finally obtained control of the gun and tried to exit the car, while Hall began to drive away. Hall then let Banks out of the car and Banks took the gun with him, since he was afraid of being shot in the back. Banks admitted to putting the gun in the clothes hamper in the apartment where he was found by police.

{¶18} Banks stated that he did not tell police during subsequent interviews that Hall tried to shoot him because he felt that they would "try to turn the situation around on" him. He explained that during the struggle, Hall was the one with his finger on the trigger and Banks did not gain control of the gun until all of the shots had been fired.

{¶19} On July 19, 2012, the jury found Banks guilty of each of the counts as contained in the Indictment. This verdict was memorialized in the trial court's July 20, 2012 Judgment Entry.

{¶20} A sentencing hearing was held in this matter on August 27, 2012. The court found Banks to be a repeat violent offender, pursuant to a stipulation regarding Banks' prior crimes. Banks' counsel argued that Hall facilitated the offense through his

participating in using or selling marijuana and by grabbing the gun and allowing Banks no opportunity to withdraw. The court sentenced Banks to eleven years in prison on Count One, six years on Count Two, two years on Count Three, and two years on Count Five. The court also found that Count Three merged with Count Four. The sentences on Counts One and Two were ordered to be served consecutively. The sentences on Counts Three and Five were ordered to be concurrent with each other and the other charges. Banks was also ordered to serve three years on each of the firearm specifications, two of which were ordered to be served concurrently. An additional four-year consecutive term was imposed for the repeat violent offender specification, for a total term of 27 years imprisonment. This sentence was memorialized in an August 29, 2012 Judgment Entry of Sentence.

**{¶21}** Banks timely appeals and raises the following assignments of error:

**{¶22}** "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**{¶23}** "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

**{¶24}** "[3.] The trial court erred to the prejudice of the defendant-appellant by failing to merge allied offenses of similar import.

**{¶25}** "[4.] The trial court erred by sentencing the defendant-appellant to a term of imprisonment where its findings were not supported by the record."

**{¶26}** Since Banks' first and second assignments of error address the sufficiency and manifest weight of the evidence, we will address them jointly.

**{¶27}** A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e., "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary (6 Ed.1990), 1433. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶28}** Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credible evidence." (Citation omitted.) (Emphasis deleted.) *Thompkins* at 387. Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted). *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

8

{¶29} "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) (Emphasis sic.) *Willoughby v. Wutchiett*, 11th Dist. Lake No. 2002-L-165, 2004-Ohio-1177, ¶ 8.

{¶30} In order to convict Banks of Aggravated Robbery, the State was required to prove, beyond a reasonable doubt, that, "in attempting or committing a theft offense," he had "a deadly weapon on or about [his] person or under [his] control" and that he "either display[ed] the weapon, brandish[ed] it, * * * or use[d] it." R.C. 2911.01(A)(1). To convict Banks of Felonious Assault, the State was required to prove, beyond a reasonable doubt, that he did "knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(2).

{¶31} Banks argues generally that his convictions were against the manifest weight and sufficiency of the evidence and raises several specific arguments regarding the weight of certain pieces of evidence. First, he argues that Hall was not a credible witness, emphasizing that he changed his story and lied to the police. Hall's credibility relates to each of the charges, since he was the only witness to the shooting and the events that occurred inside of the vehicle.

{¶32} Banks points out that Hall lied about selling marijuana to Banks both previously and at the time of the shooting. Hall did admit to using marijuana, which was consistent with the fact that some was found in his vehicle. However, there was no evidence to show that Hall was selling marijuana on the date of the shooting, other than Banks' testimony. Banks also fails to explain how these facts are relevant to establish how the shooting occurred and whether Banks was responsible.

9

{¶33} While Banks also asserts that Hall was not credible because he did not initially mention to police that he had been robbed, the recording of the 911 call clearly includes the statement of Hall that "he shot me [and] he robbed me." Detective Michael Bailey also testified that upon responding to Hall's location after the shooting, Hall made such a statement.

{¶34} Finally, while Banks argues that Hall also changed his story about why he had $500 on the date of the shooting, this minor difference in his testimony regarding what he was using the money for does not invalidate his testimony. The jury could still determine that he was credible, especially given that this detail bears little relation to the facts of the crimes that were committed.

{¶35} It must also be emphasized that the issue of credibility of witnesses is for the trier of fact to determine. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986) (the determination of a witness' credibility lies "with the finder of fact and an appellate court may not substitute its own judgment"). "[T]he factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 Ohio App. LEXIS 1073, 8 (Mar. 17, 2000). The jury was in the best position to consider the testimony of both Banks and Hall to determine how the shooting occurred and whether Banks robbed Hall.

{¶36} As to the Felonious Assault, Hall knew Banks and was able to identify him as the shooter. There is no question that the shots fired hit Hall and that he was injured. Further, the record contains evidence and testimony that corroborated Hall's version of events, that Banks threatened him with a gun, robbed him, and shot him. This includes testimony that no bullets or evidence of shots fired were found on the passenger side of

10

the vehicle, where Banks was sitting, or anywhere in the vehicle other than the driver's side, where Hall was sitting. This lends credibility to Hall's version that Banks possessed the gun and was firing at him. The jury's decision to give greater weight to Banks' testimony is also supported by Banks' testimony that he never told the police after the shooting that Hall had pulled the gun on him. Testimony of the officers and the statements of Banks himself also confirmed that he took the firearm with him after the shooting, even though he claimed it did not belong to him.

{¶37} As to the Aggravated Robbery, Hall testified that Banks took $500, while pointing the gun at him. A large sum of money was found in the jeans Banks admitted were his. Hall was able to describe the denominations that were taken from him. Detective Bailey also described that the center console of Hall's car was open, which was consistent with Hall's testimony that Banks was looking through the car for items to take. While Banks argues that there was no proof that the console was not always open, the testimony was still consistent with Hall's version of the events. Based on the foregoing, the manifest weight and sufficiency of the evidence support convictions for Aggravated Robbery and Felonious Assault. *See State v. Anderson*, 11th Dist. Portage No. 2008-P-0002, 2008-Ohio-6413, ¶ 60-61 (upholding conviction for Felonious Assault when the defendants and victims gave conflicting stories of the events surrounding the crimes).

{¶38} Banks also argues that there was inconsistent evidence regarding the gunshot residue test because it does not show who actually fired the gunshots, residue was found on Banks' clothing but not his hands, and Hall's clothing was never tested. Lewis, the forensic scientist, explained that the gunshot residue was found on the

11

sleeves of Banks' sweatshirt, near where his hands would be, and explained that gunshot residue can be removed by washing a person's hands and that it usually is lost in four to six hours, while such residue stays on clothing for a longer period of time. It was also explained through the officers' testimony that Hall's clothing could not be tested, since it was given to his family by the hospital and later thrown away. Finally, Lewis explained that gunshot residue could be found on people inside of a car where a gun had been fired, regardless of whether they were the shooter. All of these facts were clearly presented to the jury, which could decide what weight to give the testimony regarding the gunshot residue, especially given that there was other sufficient evidence to support the convictions.

{¶39} Finally, Banks argues that the State implied that he made several calls to Hall on the date of the shooting, but there is no record of who made these calls, since the phone alleged to have been used by Banks belonged to another individual. Hall, however, testified that he talked to Banks on that phone number and that he received several calls from the number. Phone records of the calls were presented to the jury. Again, it is for the jury to decide how much weight to give this evidence, especially given that it bears little relation to the events surrounding the charges in the present case. Banks fails to explain how the number of phone calls made by him to Hall affects whether a shooting and robbery occurred.

{¶40} Regarding the firearm related offenses, to convict Banks of Discharge of a Firearm on or near a Prohibited Premises, the State was required to prove that he "[d]ischarge[d] a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). Based on the evidence outlined above, there was sufficient evidence that Banks fired

12

the gun at Hall. Hall testified that he was parked in the public street when Banks fired the shots. Police also found glass in the roadway, where a shot went through the driver's side window of Hall's vehicle. Based on these facts, it was not against the weight and sufficiency of the evidence to find that the shot fired by Banks was discharged over a public road.

{¶41} As to Having Weapons While Under Disability, the State was required to prove that Banks did "knowingly acquire, have, carry, or use any firearm or dangerous ordnance," and that he was convicted of "any felony offense of violence" or felonies involving the "illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.13(A)(2) and (3). The parties stipulated that Banks was under a firearm disability, based on his prior convictions. Since there was evidence to support a finding that Banks used a firearm, as discussed above, and the parties stipulated as to the disability element, we find that the convictions for these charges were supported by the weight and sufficiency of the evidence.

{¶42} The first and second assignments of error are without merit.

{¶43} In his third assignment of error, Banks argues that the trial court erred in failing to merge the Felonious Assault charge with the Discharge of a Firearm charge, since they were allied offenses. He also argues that the trial court erred by failing to merge the Aggravated Robbery and Felonious Assault charges.

{¶44} The State "concedes that Count 5, discharge of a firearm on or near a prohibited premises merges with felonious assault." It argues, however, that Aggravated Robbery and Felonious Assault do not merge because the conduct and animus for each charge was different.

13

**{¶45}** "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶46}** "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. It provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). However, "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

**{¶47}** "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. The Ohio Supreme Court has described the application of R.C. 2941.25 as follows:

> **{¶48}** In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is

14

possible to commit one *without* committing the other.  * * *  If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶49} If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."  *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

{¶50} If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶51} Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

{¶52} *Johnson* at ¶ 48-51.

{¶53} We first point out that Banks did not object to the trial court's failure to merge the counts in question.  The Supreme Court of Ohio, however, has held that the "imposition of multiple sentences for allied offenses of similar import is plain error." (Citation omitted.)  *Underwood* at ¶ 31.

{¶54} As to the Felonious Assault and Discharge of a Firearm on or near a Prohibited Premises, the State concedes that these charges should have been merged.

15

Various courts have found that these charges can be committed with the same conduct in similar circumstances to the present case, where a defendant fired a shot at a victim while on a public roadway. *See State v. Melton*, 8th Dist. Cuyahoga No. 97675, 2013-Ohio-257, ¶ 54 ("under the first prong of the *Johnson* inquiry, it is possible to commit felonious assault * * * and discharge of a firearm on or near prohibited premises" with the same conduct, where a shooting takes place in the middle of the street); *State v. Carson*, 2012-Ohio-4501, 978 N.E.2d 621, ¶ 18 (10th Dist.) (where the defendant fired at an occupant of a car while it was being driven away, the defendant "could have committed * * * the felonious assaults and the firearm discharge offense through the same conduct").

**{¶55}** In addition, in the present matter, the two offenses were committed with the same act and a single animus and should have merged. Banks fired the gun at Hall while in the car, which resulted in at least one bullet exiting the car, while the car was on the roadway. The bullet was discharged as a part of the assault on Hall. *State v. Hodges*, 1st Dist. Hamilton No. C-110630, 2013-Ohio-1195, ¶ 17 (where the record did not reflect a separate intent to fire into a home, but the defendant's "immediate motive was clearly to injure [the victim] after their verbal altercation had escalated," there was no separate animus and the crimes should merge). Therefore, the trial court erred in failing to merge the two charges.

**{¶56}** In light of the foregoing error, modification of Banks' sentence by this court is proper. "Section 3(B)(2), Article IV of the Ohio Constitution establishes that courts of appeals 'shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court

16

of appeals within the district.'" *State ex rel. Bates v. Court of Appeals for the Sixth Appellate Dist.*, 130 Ohio St.3d 326, 2011-Ohio-5456, 958 N.E.2d 162, ¶ 14. In the context of certain sentencing errors, the Ohio Supreme Court has noted that correcting a defect in a sentence without remanding to the lower court for resentencing can provide "an equitable, economical, and efficiency remedy." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 30. This matter can be remedied by modifying the trial court's judgment to merge the charges and vacate the improper sentence, which this court has done in the past. *State v. Day*, 11th Dist. Geauga No. 1440, 1988 Ohio App. LEXIS 4480, 6 (Nov. 10, 1988) (since the offenses were allied offenses, the court erred in sentencing appellant for both and the appellate court modified the trial court's judgment by vacating the improper sentence).

{¶57} Based on the foregoing, we modify the trial court's judgment, merging the Discharge of a Firearm on or near a Prohibited Premises conviction into the Felonious Assault conviction for the purposes of sentencing, since the State indicated to this court that it would elect such a merger. We also modify the trial court's judgment by vacating Banks' sentence for Discharge of a Firearm on or near a Prohibited Premises, which was two years in prison. This does not alter Banks' total term to be served, since the sentence was ordered to be served concurrently with other sentences.

{¶58} Regarding the Felonious Assault and the Aggravated Robbery charges, merger was not warranted and no error was made by the trial court, since there was a separate animus for each of the crimes. Banks entered Hall's vehicle with a gun and told Hall to give him everything that he had. After Hall had done so, Banks then stated he was going to shoot Hall. After Hall tried to get the gun away from Banks, he was

17

shot. As Hall explained, even after he tried to drive away, Banks fired a third shot and hit him in the arm. There is no indication that Banks fired the shots in order to obtain the money from Hall, since Hall's testimony was that it was handed over voluntarily. Moreover, pursuant to Hall's testimony, the shots were purposeful, as he explained that Banks "shot at" him, even after all property had been turned over. This provides support for the conclusion that there was a separate animus for the two crimes and merger was unwarranted. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 19 (merger was proper where the victim had already dropped his property, the defendant could have simply taken the property "without resorting to any separate and distinct physical violence," and the "assault was so unnecessary for the robbery itself that it demonstrated a significance independent of that robbery").

{¶59} The third assignment of error is with merit, only with respect to the trial court's failure to merge the Felonious Assault and Discharge of a Firearm on or near a Prohibited Premises charges. It is without merit as to the remaining merger issue.

{¶60} In his fourth assignment of error, Banks argues that the court failed to give careful and substantial deliberation to the relevant statutory considerations related to his sentencing and failed to give him the minimum sanction without imposing a burden on government resources under R.C. 2929.11(A).

{¶61} Subsequent to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, appellate courts have applied a two step approach in reviewing felony sentences. First, courts "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's

18

decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26.

**{¶62}** A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). A court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A). "In the exercise of this discretion, a court 'shall consider' the non-exclusive list of seriousness and recidivism factors set forth in R.C. 2929.12(B), (C), (D), and (E)." (Citation omitted.) *State v. Putnam*, 11th Dist. Lake No. 2012-L-026, 2012-Ohio-4891, ¶ 8; R.C. 2929.12(A).

**{¶63}** There is no "mandate" for the sentencing court to engage in any factual finding under these statutes. Rather, "[t]he court is merely to 'consider' the statutory factors." *Foster* at ¶ 42.

**{¶64}** In the present matter, the court explicitly stated in its judgment that it considered the requisite factors under R.C. 2929.11 and 2929.12. Further, the court emphasized that its sentence was based on Banks' extensive criminal record, which was well- documented in the presentence investigation report, that he did not respond well to sanctions in the past, and his relationship with the victim facilitated the offense. Each of these are factors that were properly considered by the court in reaching its sentence.

{¶65} Banks argues that his relationship with the victim did not facilitate the offense. However, the court made it clear that it believed a friendship between Banks and Hall existed, based on Hall's testimony, and that it could have made the crime easier to commit. Further, this is only one factor of many that the court considered.

{¶66} Although Banks also points out that his remorse should have been taken into consideration by the court, the trial court stated that it weighed this factor. It did not find Banks remorseful and that he did not accept responsibility for the crime. "[A] reviewing court must defer to the trial court as to whether a defendant's remarks are indicative of genuine remorse because it is in the best position to make that determination." (Citation omitted.) *State v. Davis*, 11th Dist. Lake No. 2010-L-148, 2011-Ohio-5435, ¶ 15.

{¶67} Finally, Banks emphasizes that the court must use the "minimum sanctions" that the court determines accomplishes the purposes of sentencing "without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). This court has noted that this provision "embodies the principle referred to as the 'resources conservation' principle found in former R.C. 2929.13." *State v. Anderson*, 11th Dist. Geauga No. 2011-G-3044, 2012-Ohio-4203, ¶ 35. Further, in applying this principle, courts have determined that "while resource and burdens to the government may be a relevant sentencing criterion, the statute 'does not require trial courts to elevate resource conservation above the seriousness and recidivism factors.'" (Citation omitted.) *Id.* at ¶ 36. As noted in the present matter, the court emphasized that there were several seriousness and recidivism factors that weighed heavily in this case. It follows that these justified the sentence that was given to Banks.

**{¶68}** The concurring/dissenting judge argues that the *Kalish* test outlined above is no longer applicable following the passage of H.B. 86, apparently asserting that this court should not review the sentence for an abuse of discretion. This court, as well as other districts, however, have consistently applied this two-step *Kalish* test following the enactment of H.B. 86. *State v. Beville*, 11th Dist. Ashtabula No. 2012-A-0057, 2013-Ohio-2139, ¶ 9; *State v. Tyler*, 11th Dist. Portage No. 2012-P-0041, 2013-Ohio-3393, ¶ 11-16; *State v. Forney*, 2nd Dist. Champaign No. 2012-CA-36, 2013-Ohio-3458, ¶ 33; *State v. Bratton*, 6th Dist. Lucas Nos. L-12-1219 and L-12-1220, 2013-Ohio-3293, ¶ 10-11. The dissenting/concurring judge would have us now abandon this precedent, but we find no basis to do so. In *Kalish*, the Ohio Supreme Court emphasized that "R.C. 2929.12 explicitly permits a trial court to exercise its discretion in considering whether its sentence complies with the purposes of sentencing. It naturally follows, then, to review the actual term of imprisonment for an abuse of discretion." *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 17. H.B. 86 did not amend this language in R.C. 2929.12, and it follows that an abuse of discretion standard must still be applied when evaluating whether the court considered the R.C. 2929.12 factors, as was at issue in this case.[1]

**{¶69}** The fourth assignment of error is without merit.

**{¶70}** For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, sentencing Banks for Aggravated Robbery and Discharge of a Firearm on or near a Prohibited Premises, is affirmed as modified. In all other respects, the judgment is affirmed. Costs to be taxed against the parties equally.

---

1. We recognize that the law regarding consecutive sentencing changed following H.B. 86. However, Banks raises no error related to the court's consideration of the appropriate factors in ordering him to serve consecutive sentences.

TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part with a concurring/dissenting opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

{¶71} I concur with the majority's well-reasoned opinion regarding assignments of error one and two. However, I respectfully dissent on assignments of error three and four.

{¶72} With regard to the aggravated robbery and felonious assault charges, the majority contends under the third assignment of error that merger was not warranted and no error was made by the trial court because a separate animus existed for each of the crimes. Based on the facts presented, I disagree.

{¶73} This writer wishes to expand on the majority's citations regarding allied offenses and the judicial doctrine of merger by providing the following background:

{¶74} Our review of an allied offenses question is de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶12. "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense.' *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, * * * ¶23. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is 'the penal philosophy that a major crime often includes as inherent therein the component

22

elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' *State v. Botta*, 27 Ohio St.2d 196, 201 * * * (1971)." (Parallel citations omitted.) *Williams* at ¶13.

{¶75} R.C. 2941.25 states:

{¶76} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶77} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶78} "R.C. 2941.25(A) clearly provides that there may be only *one conviction* for allied offenses of similar import. Because a defendant may be convicted of only one offense for such conduct, the defendant may be sentenced for only one offense. * * * [A]llied offenses of similar import are to be merged at sentencing. *See State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, * * * ¶43; *State v. McGuire* (1997), 80 Ohio St.3d 390, 399 * * *. Thus, a trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. * * * Both R.C. 2941.25 and the Double Jeopardy Clause prohibit multiple convictions for the same conduct. For this reason, a trial court is required to merge allied offenses of similar import at sentencing." *Underwood, supra,* at ¶26-27. (Emphasis sic.) (Parallel citations omitted.)

{¶79} "Under Crim.R. 52(B), '(p)lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' * * * [I]mposition of multiple sentences for allied offenses of similar import is plain error. *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, * * *, ¶96-102." *Underwood, supra,* at ¶31. (Parallel citation omitted.)

{¶80} By way of background, the method employed by courts in determining whether two crimes constitute allied offenses of similar import has evolved. In *State v. Rance*, 85 Ohio St.3d 632 (1999), the Supreme Court of Ohio held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract.*" *Id.*, paragraph one of the syllabus. (Emphasis sic.) Since its release, *Rance* has gone through various modifications and revisions. *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059.

{¶81} The Supreme Court of Ohio revisited the allied offenses analysis again in 2010 and overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under the new analysis, which this court later relied upon and embraced in *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, at the syllabus. The *Johnson* court provided the new analysis as follows:

{¶82} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and*

24

commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.  * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶83}  "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'  * * *.

{¶84}  "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶85}  "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has [a] separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."  *Id.* at ¶48-51.  (Citations omitted.) (Emphasis sic.)

{¶86}  This court went on to state in *May, supra,* at ¶50-51:

{¶87}  "'In departing from the former test, the court developed a new, more context-based test for analyzing whether two offenses are allied thereby necessitating a merger.  In doing so, the court focused upon the unambiguous language of R.C. 2941.25, requiring the allied-offense analysis to center upon the defendant's conduct, rather than the elements of the crimes which are charged as a result of the defendant's conduct.'" [*State v.*] *Miller*[,11th Dist. No. 2009-P-0090, 2011-Ohio-1161,] at ¶47, citing *Johnson* at ¶48-52.

{¶88} "'The (*Johnson*) court acknowledged the results of the above analysis will vary on a case-by-case basis. Hence, while two crimes in one case may merge, the same crimes in another may not. Given the statutory language, however, this is not a problem. The court observed that inconsistencies in outcome are both necessary and permissible "* * * given that the statute instructs courts to examine a defendant's conduct - an inherently subjective determination."' *Miller* at ¶52, quoting *Johnson* at ¶52.

{¶89} In this case, the issue is whether aggravated robbery and felonious assault are allied offenses of similar import subject to merger for purposes of sentencing, which we review de novo. *Williams, supra,* at ¶12.

{¶90} Aggravated robbery, under R.C. 2911.01(A)(1), states in part: "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶91} Felonious assault, under R.C. 2903.11(A)(2), provides in part: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶92} Applying *Johnson*, aggravated robbery and felonious assault are allied offenses of similar import, as it is possible to commit one offense and commit the other with the same conduct. *See State v. Sanders*, 8th Dist. No. 97383, 2012-Ohio-3566, ¶23. Again, under R.C. 2941.25, Ohio's multiple-count statute, if a defendant's conduct

26

results in allied offenses of similar import, the defendant may ordinarily be convicted of only one of the offenses. R.C. 2941.25(A). However, if the defendant commits each offense separately or with a separate animus, then convictions may be entered for both offenses. R.C. 2941.25(B).

{¶93} Thus, although aggravated robbery and felonious assault are allied offenses, the specific facts of this case must be reviewed to determine whether appellant committed the charged offenses separately or with a separate animus so as to permit multiple punishments. Although the majority finds that the facts do not support merger, I find the opposite.

{¶94} In this case, the record establishes that appellant evidenced the same animus in committing these offenses. Looking to the conduct of the accused, this was a single act with a single state of mind. The test under *Johnson* is not whether the elements line up, which is the essence of the *Rance* analysis. Rather, the test is whether the crimes were committed by the same conduct.

{¶95} There is no separate animus or conduct separating the harm to Mr. Hall from the robbery. The offenses were committed in the same course of conduct, i.e., appellant's plan to rob Mr. Hall. In the course of the robbery and without any separate intent, Mr. Hall was shot and a stray bullet flew over the road. It is nonsensical to believe that appellant committed a robbery, then decided separately to shoot Mr. Hall, then decided separately to shoot across the road. Thus, under *Johnson*, the offenses should merge.

{¶96} "'[T]he purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for

closely related offenses arising from the same occurrence.'" *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶68, quoting *Johnson, supra,* at ¶43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 242 (1976). In this case, multiple sentences have been improperly "heaped" on appellant, amounting to an undue burden on our already overcrowded prison system pursuant to the principles and purposes of sentencing under R.C. 2929.11.

{¶97} Based on the facts of this case, the offenses of aggravated robbery and felonious assault are allied offenses of similar import, were committed with the same animus, and should have merged. Therefore, I believe the trial court erred in stacking those offenses along with the firearm and RVO specifications. Appellant's sentence was excessive as he should not have been sentenced separately for each offense.

{¶98} In addition, regarding appellant's sentence, the majority under the fourth assignment of error improperly applies *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, in light of H.B. 86.

{¶99} Prior to 2006, Ohio sentencing law created presumptions that offenders be given minimum, concurrent terms of incarceration. *See* former R.C. 2929.14(B), 2929.14(E)(4), 2919.19(B)(2), and 2929.41. These presumptions could be overcome if the court made specific factual findings regarding the nature of the offense and the need to protect the public. This judicial fact-finding was later called into question by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), where the United States Supreme Court held that judicial fact-finding could infringe upon a defendant's Sixth Amendment right to a jury trial because it invaded the factfinding function of the jury.

{¶100} In 2006, the Ohio Supreme Court held that under *Apprendi* and *Blakely*, Ohio's sentencing statutes that required a judge to make factual findings in order to increase a sentence beyond presumptive minimum or concurrent terms unconstitutionally infringed on the jury's function in violation of the Sixth Amendment. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. As a result, the Court severed those sections and held that courts have full discretion to sentence within the applicable statutory range and to order sentences to be served consecutively. *Id.* at ¶99-100.

{¶101} In applying *Foster,* the Ohio Supreme Court later held in 2008 that appellate courts must apply a two-step procedure for review of a felony sentence. *Kalish, supra.* In the first step, the *Kalish* Court held that appellate courts shall examine the sentencing court's compliance with "all applicable rules and statutes in imposing the sentence" to determine whether the sentence is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G). *Id.* at ¶26. If this first step is satisfied, the Court held that the trial court's decision shall be reviewed under an abuse-of-discretion standard. *Id.*

{¶102} This writer notes that *Kalish*, an appeal from this court, *State v. Kalish*, 11th Dist. No. 2006-L-093, 2007-Ohio-3850 (O'Toole, J., concurring in part, dissenting in part) is a plurality opinion. Therefore, it is merely persuasive. *See State v. Azbill*, 11th Dist. No. 2007-L-092, 2008-Ohio-6875, citing *State v. Bassett*, 8th Dist. No. 90887, 2008-Ohio-5597, ¶24, fn.2. Although the plurality in *Kalish* indicated that this court did not review the sentence to ensure that the trial court clearly and convincingly complied with the pertinent laws, it nevertheless affirmed this court's judgment, albeit on different grounds.

**{¶103}** Thereafter, in 2009, the reasoning in *Foster* was partially called into question by *Oregon v. Ice*, 555 U.S. 160 (2009), where the United States Supreme Court held that a state could require judicial findings of fact to impose consecutive rather than concurrent sentences without infringing on a defendant's Sixth Amendment rights. In 2010, the Ohio Supreme Court subsequently determined that *Foster* remained valid after *Ice* and the judiciary was not required to make findings of fact prior to imposing maximum or consecutive sentences in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320. However, a trial court was still required to consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *See Foster, supra,* at ¶36-42.

**{¶104}** On September 30, 2011, Ohio's sentencing statutes were revised pursuant to H.B. 86. The Ohio General Assembly enacted a new, but slightly different, requirement of judicial fact-finding under H.B. 86, containing many amendments to criminal sentencing provisions. For example, H.B. 86 revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4), requiring a trial court to make specific findings when imposing consecutive sentences. In addition, H.B. 86 reduced the maximum prison term for many third-degree felonies from five years to 36 months. As a result, we no longer apply the two-step analysis contained in the 2008 *Kalish* case to defendants sentenced after H.B. 86's enactment. Rather, we apply R.C. 2953.08(G) and the clear and convincing standard to determine whether the sentence is contrary to law. *See e.g. State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, ¶10; *State v. Drobny*, 8th Dist. No. 98404, 2013-Ohio-937, ¶5, fn.2; *State v. Kinstle*, 3rd Dist.

No. 1-11-45, 2012-Ohio-5952, ¶47; *State v. Cochran*, 10th Dist. No. 11AP-408, 2012-Ohio-5899, ¶52.

**{¶105}** In reviewing a felony sentence, R.C. 2953.08(G) provides:

**{¶106}** "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶107}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶108}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶109}** "(b) That the sentence is otherwise contrary to law."

**{¶110}** The Eighth District recently stated in *Venes, supra,* at ¶20-21:

**{¶111}** "It is important to understand that the 'clear and convincing' standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that '(t)he appellate court's standard for review is not whether the sentencing court abused its discretion.' As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

31

{¶112} "It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review."

{¶113} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

{¶114} The majority correctly points out that H.B. 86 did not amend the language contained in R.C. 2929.12. However, H.B. 86 did amend R.C. 2929.11, which now states:

{¶115} "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

{¶116} "However, there is still no 'mandate' for the sentencing court to engage in any factual findings under R.C. 2929.11 or R.C. 2929.12." *State v. Jones*, 12th Dist.

32

No. CA2012-03-049, 2013-Ohio-150, ¶49, citing *State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶78; *State v. Putnam,* 11th Dist. No. 2012-L-026, 2012-Ohio-4891, ¶9. "Rather, the trial court still has discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure." *Jones* at ¶49; *See* R.C. 2929.12 (which provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.)

{¶117} In this case, appellant was sentenced after H.B. 86 was enacted. Thus, H.B. 86 applies here. Therefore, this court should review the trial court's sentence under H.B. 86 to determine if it is clearly and convincingly contrary to law. *See Venes, supra,* at ¶10; *Kinstle, supra,* at ¶47; *Cochran, supra,* at ¶52. Thus, in light of H.B. 86, I believe my colleagues improperly apply *Kalish*, an outdated plurality opinion. Whether raised or not, courts shall review the imposition of multiple sentences for plain error, consistent with the principles and purposes of sentencing under R.C. 2929.11. *See Underwood, supra,* at ¶31.

{¶118} For the foregoing reasons, I concur in part and dissent in part.